UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEHINDE TYRU WOFFORD,

        Petitioner,                      Case Number: 2:10-CV-12266

v.                                              HONORABLE AVERN COHN

LLOYD W. RAPELJE,

        Respondent.
                                         /

**MEMORANDUM AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

**I. Introduction**

This is a habeas case under 28 U.S.C. § 2254. Petitioner Kehinde Tyru Wofford (Petitioner), a state inmate incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, filed a *pro se* petition for a writ of habeas corpus challenging his convictions for felony-firearm and felon in possession of a firearm.[1] Respondent, through the Attorney General's office, filed a response, arguing that Petitioner's claims are without merit. For the reasons which follow, the petition will be denied.

**II. Background**

**A. Facts**

Petitioner's convictions arise from the shooting deaths of Herbert Lewis and Leonard Jones on July 29, 2005, in Detroit. Petitioner was tried jointly with co-

---

[1] According to the State Offender Tracking System, Petitioner is also serving a sentence of at least 50 years on kidnapping, armed robbery, and other charges for an unrelated incident.

defendant Marsh Spears. The testimony at trial came largely from an accomplice to the murders, Jovan Sly. His testimony is summarized as follows.

Jovan Sly testified that he was responsible for the murders with Petitioner, Marsh Spears, and Leroy Wilson. Sly explained that while under arrest for an unrelated crime, wished to clear his conscience about the murders of Lewis and Jones. Sly was put in contact with Detroit Police Department Homicide Detective Derryk Thomas to whom he gave a statement about the murders.

Sly testified that, on July 29, 2005, he, Petitioner, and Wilson conferred with Spears, a drug dealer. Spears asked Sly to kill someone because the man was supposed to be dealing drugs for Spears, but shorted him $1,300. Spears promised he would pay Sly the $1,300 he was owed in exchange for the murder. Sly agreed that he would kill the man and Spears handed Sly a handgun. Sly then asked Petitioner and Wilson if they would assist in the killing and both agreed, with Petitioner saying he expected to be paid for assisting. Spears suggested that the men go over to the drug house from which the intended target operated and pretend to buy an ounce of marijuana in order to draw the man out of the house.

Sly further testified that he, Petitioner, and Wilson, were carrying handguns as they walked to the house of the intended victim.[2] Upon arriving at the house, Wilson and Sly asked to buy an ounce of marijuana. The intended victim said he did not have that much available in one package, but called someone who did. Sly and Wilson decided to call off the killing because a man standing behind the intended victim

---

[2] The intended victim's identity was not definitively established at trial.

appeared to be armed. Additionally, cars were pulling up in front of the house. The three men began walking back to Spears' house. As they were walking, a man, later identified as Leonard Jones, followed them.

Next, according to Sly's testimony, a truck pulled up and a man, later identified as Herbert Lewis, exited from the driver's seat. As Lewis approached, he pulled a "hoodie" over his head and asked if they were the ones looking to buy marijuana. Sly testified that Petitioner said, I'm fixin to check this [man]" and then punched Lewis, who fell to the ground. Sly testified that Petitioner then shot Lewis four or five times. Petitioner told Sly to check Lewis's pockets, which Sly did.

Sly then testified that as he and Petitioner were attacking Lewis, Wilson was dealing with the other victim, Jones. Sly heard a gunshot. He followed the sound of the shot and found Wilson standing over Jones, who was lying in Spears' yard. Not wanting to kill the man in Spears' yard, Wilson and Sly moved Jones into some bushes in another yard. Wilson then shot Jones in the head.

Finally, according to Sly's testimony, the three men left the area. Petitioner told Sly to demand $6,000 for the killings, which he did. Although Spears was upset they did not kill the intended target, he paid the men $1,000.00.

In addition to Sly's testimony, James Beard testified that on the night of the murders he heard popping noises as he was leaving his house. He did not know if the popping noises were from fireworks or a gun. Beard also testified that he saw Jones running and laughing. As Jones was running, he slipped and a tall man walked up to him. Then, as Beard was driving his car, he heard what sounded like "help" and another pop.

Neither Petitioner nor Spears testified.

## B. Procedural History

Petitioner was charged with six counts: (1) first-degree premeditated murder of Herbert Lewis; (2) first-degree premeditated murder of Leonard Jones; (3) felony murder of Lewis during an attempted larceny; (4) conspiracy to commit first-degree murder; (5) felon in possession; and (6) felony-firearm. Following a jury trial in Wayne County Circuit Court, Petitioner was convicted only of felony-firearm and felon in possession of a firearm.[3] On April 26, 2007, he was sentenced as a third habitual offender to four years and nine months to ten years in prison for the felon-in-possession conviction and to two years for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised these claims:

    I.      Mr. Wofford was denied his Sixth and Fourteenth Amendment rights to a fair trial and due process of law through improper argument of the prosecutor.

    II.     Mr. Wofford was denied his Sixth Amendment right to the effective assistance of counsel where counsel failed to object to the prosecutor's improper argument.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Wofford*, No. 278240 (Mich. Ct. App. May 21, 2009).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. The application was denied. *People v. Wofford,* 485 Mich. 927 (Mich. 2009).

Petitioner then filed the pending habeas corpus petition. He raises these claims:

---

[3]Spears was acquitted of all charges.

I. Prosecutorial misconduct

II. Ineffective assistance of counsel

### III. Standard of Review

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's

5

application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*,

203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. Analysis

### A. Prosecutorial Misconduct

Petitioner claims that he was denied his right to a fair trial by the prosecutor's misconduct. Specifically, Petitioner claims that the prosecutor committed misconduct by: (1) referencing, in closing argument, several high-profile, but unrelated criminal prosecutions; (2) referencing facts not in evidence; and (3) denigrating defense counsel.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)). The Court must first consider whether the prosecutor's conduct and remarks were improper, and, if so, consider the following four factors to determine "whether the impropriety was flagrant" and thus warrants habeas relief:

(1) whether the conduct and remarks of the prosecutor tended to mislead

the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir. 2007) (internal quotations omitted).

First, Petitioner argues that, in her closing argument, the prosecutor improperly referenced high-profile criminal prosecutions. Specifically, the prosecutor referenced local shootings, the Enron scandal, and various other cases in support of her argument that, historically, prosecutors have relied on insiders or culpable witnesses to secure convictions. The Michigan Court of Appeals, rejected Petitioner's argument, stating:

> Taken in context, . . . the prosecutor's references were part of an attempt to make the jury more comfortable with the idea that it could convict solely based on an accomplice's testimony. Hence, although the references suggest an improper appeal to convict based on civic duty, *see People v. Bahoda*, 448 Mich. 261, 282-83; 531 N.W.2d 659 (1995), and were based on facts not in evidence, the remarks were not part of a deliberate attempt to improperly influence the jury by injecting issues broader than Wofford's guilt or innocence. *Id.* at 284. Likewise, the trial court actually sustained Wofford's trial counsel's objections and prevented the prosecutor from developing the references or making an argument based on them. Finally, the trial court instructed the jury that the parties' attorneys' closing remarks were not evidence and could not be considered when determining guilt or innocence.

*Wofford*, slip op. at 4.

The Court agrees with the Michigan Court of Appeals. A prosecutor's appeal to the jury to act as the community conscience is not *per se* impermissible, "[u]nless calculated to incite the passions and prejudices of the jurors." *Byrd v. Collins*, 209 F.3d 486, 539 (6th Cir. 2000)(*quoting United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991)). Read in context, the remarks clearly were, as the court of appeals found, intended to explain to the jury that an accomplice's testimony may form the basis for a

8

conviction. The argument was not intended to appeal to the jury's fear or to incite prejudice in the jury. Further, the trial court instructed the jury to base their decision only on the evidence and the law, not on their sympathies or prejudices. *See Hatchett v. Rapelje*, 2012 WL 529916, *4 (E.D. Mich. Feb. 17, 2012) (holding that jury instruction advising jurors they were required to decide facts on basis of properly admitted evidence mitigated prosecutor's civic duty argument). The Michigan Court of Appeals' decision that the prosecutor's argument did not amount to prosecutorial misconduct was neither contrary to nor an unreasonable application of clearly established federal law.

Second, Petitioner argues that the prosecutor improperly attempted to have the jury consider facts not in evidence. During closing arguments, defense counsel remarked about the lack of fingerprint evidence on both the spent shell casings and the live bullet found at the murder scene. Defense counsel argued that Sly's testimony would be more credible if fingerprint evidence had corroborated his testimony. In rebuttal, the prosecutor said: "We didn't get any fingerprints off the casings. You heard what happens to this item when there is an explosion inside of it, you don't have fingerprints on it." The prosecutor then reminded the jury that Petitioner's trial counsel had objected when the prosecutor attempted to have a police officer explain the lack of fingerprints. Petitioner's counsel objected to this argument. The trial court sustained the objection.

The Michigan Court of Appeals held that although the prosecutor's argument about the fingerprints was improper, the argument did not deny Petitioner a fair trial. The Michigan Court of Appeals reasoned:

> We agree that the prosecutor clearly invited the jury to improperly consider

9

> facts not in evidence with these remarks – namely, that any fingerprints on a casing would be lost during the firing process. . . . However, on this record, we conclude that the improper remarks did not deprive Wofford of a fair trial. Taken in context, these remarks were an attempt to respond to Wofford's trial counsel's improper argument that the police either negligently or deliberately failed to check the casings for fingerprints even though that is normally the "first thing people should be looking at." . . . In addition, Wofford's counsel objected to the improper remarks and the trial court sustained the objection. The trial court also admonished the prosecutor that she would not be permitted to "testify" during her closing statement and later instructed the jury that the prosecutor's closing remarks were not evidence. We conclude that the trial court's instruction cured any prejudice occasioned by this improper argument.

*Wofford,* slip op. at 5.

While clearly not supported by the evidence, the prosecutor's argument was brief, isolated, and followed by an admonition to the prosecutor and, later, an instruction that the prosecutor's comments were not evidence. The court of appeals' determination that the comments did not, in context, amount to a due process violation was reasonable. Petitioner is not entitled to relief on this ground.

Finally, Petitioner argues that, in her rebuttal argument, the prosecutor improperly denigrated defense counsel. The Michigan Court of Appeals summarized the prosecutor's rebuttal argument as follows:

> In her rebuttal, the prosecution characterized Wofford's trial counsel's attempt to shift the focus of the trial to the police department and its investigation as a "diversion" or a "red herring." She also stated that Wofford's trial counsel's argument that there was no evidence to corroborate Sly's testimony as "a lie, that's a lie, that's a lie, ladies and gentlemen." She then went on to describe how the physical evidence was consistent with Sly's testimony. The prosecutor also accused Wofford's trial counsel of misrepresenting the facts. The prosecutor suggested that one such misrepresentation involved Wofford's trial counsel's suggestion that Sly was motivated by a grudge to implicate Wofford. She noted that there was no evidence of a grudge – no evidence that Sly had an altercation with Wofford over a girl and no evidence that Sly shot Wofford. She explained that, when asked about the alleged dispute and shooting,

10

> Sly testified that the claims were "nonsense."
>
> > And it's that answer it's nonsense is what your evidence is. Not his [Wofford's trial counsel's] question. Not what he wants to poison your mind with to suggest I'm going to throw something out there. To suggest a motive. To create a beef between Sly and [Wofford]. [Sly] said hey it didn't happen. I visited [Wofford] in the hospital when he got shot in August and when he got shot in September. I continued to hang out with him after these events. I visited him again in the hospital.

*Wofford*, slip op. at 6.

The Michigan Court of Appeals then concluded that the prosecutor's remarks did not deprive Petitioner a fair trial, explaining, in relevant part:

> This Court typically affords the prosecutor great latitude in making her arguments, but a prosecutor must not suggest that defense counsel is deliberately misleading the jury. *People v. Unger*, 278 Mich. App. 210, 236; 749 N.W.2d 272 (2008). However, taken in context, we conclude that the prosecutor was not directly impugning the character of Wofford's trial counsel; instead, she attacked – albeit in particularly strong language – his argument that the physical evidence did not corroborate Sly's testimony and his argument premised on facts not in evidence. Nevertheless, we agree that the prosecutor overstepped the boundaries of proper rebuttal when she characterized Wofford's trial counsel's remarks about the evidence as misrepresentations and lies and accused him of trying to poison the jurors' minds, *id.,* but we do not agree that these remarks warrant a new trial.[ ] The prosecutor's remarks were an attempt to focus the jury on the details of Sly's testimony and the fact that, contrary to Wofford's trial counsel's arguments, the testimony was consistent with the physical evidence. The jury heard these remarks in this context and likely understood that the prosecution was merely using strong langauge to assert that trial counsel's position regarding the physical evidence should not be accepted. . . . Thus, even though we find the prosecutor's decision to use this language regrettable, we conclude that any prejudice was minimal and could easily have been cured by a proper instruction. . . . Therefore, there was no error warranting relief.

*Wofford*, slip op. at 6-7.

It is clearly inappropriate for a prosecutor to make personal attacks on a defendant or defense counsel. *See, e.g., United States v. Collins*, 78 F.3d 1021, 1040

11

(6th Cir. 1996). Prosecutors may not "make unfounded and inflammatory attacks on the opposing advocate," *U.S. v. Young*, 470 U.S. 1, 9 (1985), "or argue that counsel is attempting to mislead the jury." *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008). Prosecutors may, however, highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of evidence supporting the defense theory. *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). A prosecutor's description of defense counsel's argument as a red herring, a smoke screen, or a distraction is not *per se* improper. *See United States v. Bernard*, 299 F.3d 467, 487-88 (5th Cir. 2002); *United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992). Such arguments can be reversible error when the prosecutor makes "personal, unsubstantiated attacks on the character and ethics of opposing counsel" and accuses defense counsel of conspiring with the defendant to fabricate testimony. *See United States v. Holmes*, 413 F.3d 770, 775 (8th Cir. 2005). But, the remarks must be considered in the context of the trial, adequate jury instructions, and the evidence against the defendant. *Rodriguez v. Peters*, 63 F.3d 546, 560 (7th Cir. 1995).

The Court cannot conclude that the court of appeals unreasonably viewed the substance or effect of the state prosecutor's comments. It therefore follows that the Michigan Court of Appeals' determination that the prosecutor's conduct did not deprive the petitioner of a fair trial is not contrary to, nor an unreasonable application of, federal law or the facts.

### B. Ineffective Assistance of Counsel

Petitioner next claims that his counsel was ineffective for failing to object to the prosecutor's alleged misconduct.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

The Michigan Court of Appeals held that counsel was not ineffective. First, the court of appeals noted that trial counsel did object to some of the prosecutor's remarks and the trial court sustained the objections. Second, for those remarks to which counsel did not object, the Michigan Court of Appeals held that counsel may have determined,

13

as a matter of trial strategy, that it was better to refrain from objecting in those instances. Further, the Michigan Court of Appeals held that, even assuming that counsel should have objected to the prosecutor's conduct, Petitioner failed to show that it was reasonably probable that the failure to object affected the outcome of the trial.

Where a defense attorney objects to certain portions of a closing argument, but not others it is reasonable to conclude that the failure to object was a result of trial strategy. *Hamilton v. Jackson*, 416 F. App'x 501, 508 (6th Cir. 2011). Further, for the reasons already discussed, Petitioner has not shown he was prejudiced by the prosecutor's comments. The court of appeals' holding was not an unreasonable application of *Strickland*.

### V. Conclusion

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED. Further, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2). *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, if Petitioner chooses to appeal the Court's decision, he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated: April 20, 2012    S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 20, 2012, by electronic and/or ordinary mail.

                                          S/Julie Owens
                                        Case Manager, (313) 234-5160